UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUA JING GAO, on behalf of herself and all other persons similarly situated,

       Plaintiff,

-against-

L&L SUPPLIES, INC., YOUPENG LI, and SUSAN LIANG,

       Defendants.

Case No. 1:22-cv-03722 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

  Plaintiff Hua Jing Gao ("Plaintiff" or "Gao") brought this action against Youpeng Li ("Li"), Susan Liang ("Liang" and, together with Li, "Defendants"), and L&L Supplies, Inc. ("L&L Supplies").[1]  Gao claims that Defendants employed her at L&L Supplies from 2018 to 2022 and violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL") by failing both to pay her compensation greater than the statutory minimum wage and to compensate her for work performed in excess of forty hours per work week; and by failing to provide her with regular wage statements or wage notice at any time during her employment, including when she was hired, in violation of the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. L. § 195(1)(a), (3).  She seeks compensatory damages for her minimum wage and overtime claims, liquidated damages, statutory damages, back pay, punitive damages, an award of prejudgment and post-judgment interest, and an award of attorneys' fees and costs.  Gao also seeks injunctive relief and a declaration that the practices complained of in the complaint were unlawful under the FLSA and NYLL.  Gao

---

[1] The Court deemed L&L Supplies to be in default in April 2023 because it did not have an attorney and did not plan to obtain one.  *See* Dkt. 44.  Plaintiff has not pursued her claims against L&L Supplies since its default, including at trial, and acknowledged at trial that L&L Supplies is defunct and "irrelevant to the case."  Tr. 8:25-9:2 (Gao Opening).

originally filed this action as a putative collective action. Dkt. 1 ("Compl.") ¶¶ 1, 19-23. She never moved to certify a collective action. Accordingly, this action proceeded to trial as an individual action.

The Court held a bench trial on Gao's claims from October 21 to 23, 2024, and heard closing arguments on October 29, 2024. Having considered the parties' pretrial and post-trial submissions and the evidence presented at trial, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that she had an employer-employee relationship with either Liang or Li. As a result, the Court finds in favor of Li and Liang.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on May 6, 2022, asserting claims against Defendants and L&L Supplies for violation of the FLSA and NYLL's minimum wage and overtime requirements, as well as the WTPA's wage notice and wage statement requirements. Compl. ¶¶ 46-73. On March 13, 2023, Defendants' attorney moved to withdraw as counsel for L&L Supplies, explaining that L&L Supplies was "no longer an operating entity" and was in "dissolution proceedings." Dkt. 33. Subsequently, Defendants' attorney also moved to withdraw as counsel for Defendants, explaining that they could no longer afford to pay attorneys' fees. Dkt. 37. Magistrate Judge Gorenstein held a hearing on the matter on April 26, 2023, at which time he granted the motions and deemed L&L Supplies to be in default. Dkt. 44. Li and Liang proceeded *pro se*, *id.*, until *pro bono* counsel volunteered to represent Defendants on June 14, 2024, *see* Dkts. 72, 74. Liang elected to continue to proceed *pro se*, while *pro bono* counsel represented Li. Dkts. 75, 76-79. Subsequently, the Court granted Li's request to adjourn the trial and rescheduled the trial to begin on October 17, 2024. Dkts. 81, 82.

On September 13, 2024, Li moved to preclude Plaintiff from using prior unanswered requests for admission at trial, or, in the alternative, to permit Li to withdraw or amend those prior admissions, Dkt. 85; and for an order of evidentiary sanctions against Plaintiff resulting from her noncompliance with discovery requests, or, in the alternative, an order compelling Plaintiff to provide verified answers to Li's unanswered interrogatories, *see* Dkt. 87; Dkt. 88 at 5.  The Court granted the first motion *in limine* in full and granted the second motion *in limine* in part, permitting Defendants to serve belated requests for admission and compelling Plaintiff to provide verified answers to certain of Li's unanswered interrogatories.  Dkt. 91.

Plaintiff submitted pretrial proposed findings of fact and conclusions of law on January 31, 2024.  Dkt. 54 at 1-3 ("PFOF"); Dkt. 54 at 4-6 ("PCOL").  The Court conducted a final pretrial conference on October 1, 2024.  Dkt. 93.  The Court held a bench trial from October 21 to 23, 2024.  After Plaintiff rested, Defendant Li moved under Federal Rule of Civil Procedure ("Rule") 52(c) for judgment on partial findings.  The Court took the motion under advisement.  During the bench trial, the Court received live testimony from three witnesses — Plaintiff and both Defendants — and admitted seven exhibits into evidence.[2] The Court heard closing arguments on October 28, 2024.  On November 22, 2024, Liang and Li jointly submitted post-hearing proposed findings of fact and conclusions of law.  Dkt. 104 at 2-12 ("DFOF"); Dkt. 104 at 12-25 ("DCOL").  Plaintiff unhelpfully failed to submit any post-trial proposed findings of fact or conclusions of law.

Pursuant to Rule 52(a), the Court makes the following findings of fact and conclusions of law.

---

[2] Citations to "PX" refer to a plaintiff exhibit; "DX" to a defendant exhibit; and "Tr." to the trial transcript.  Unless otherwise indicated, where the Court cites testimony here, it has credited that testimony.

## FINDINGS OF FACT[3]

At a bench trial, the Court sits as the finder of fact. Fed. R. Civ. P. 52(a)(1); *see Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 502 F. Supp. 3d 760, 769 (S.D.N.Y. 2020). "As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony." *Chepilko v. Henry*, 722 F. Supp. 3d 329, 343 (S.D.N.Y. 2024) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 232 (S.D.N.Y. 2013)).

### I.   The Parties

Gao and Li were married in China more than thirty years ago and moved to New York City, New York in the 1990s. Tr. 34:4-20 (Gao); Tr. 146:6-10 (Li). The two have operated family sign businesses under different names at 149 East Broadway, New York, New York, throughout the last twenty years. Tr. 16:11-21 (Gao); Tr. 146:22-147:14, 180:1-181:15 (Li); *see* DX 005 at 4. In August 2018, they began operating the family sign business under the name L&L Supplies. Tr. 146:17-18 (Li). Gao and Li had no employees, Tr. 80:1-13, 151:16-21 (Li), and they kept few business records, *see* Tr. at 29:14-16 (Gao); Tr. 239:4-13 (Li). Neither of them received a paycheck; they simply lived off of the business's earnings. *See* Tr. 39:10-11 (Gao); Tr. 155:17-156:16, 157:3-14 (Li).

In 2020, Li and Liang met at a mutual friend's birthday party. Tr. 168:16-169:3 (Li); Tr. 274:22-25 (Liang). At some point thereafter, they began a romantic relationship. Tr. 283:11-284:12 (Liang); Tr. 32:5-33:18, 64:21-65:1 (Gao). Beginning in January 2018, Liang worked as a real estate agent for the company Guan Realty and began working in healthcare during the COVID-19 pandemic. Tr. 259:2-11, 260:1-261:22 (Liang). She still works in these positions. Tr. 261:6-12 (Liang).

---

[3] The Court's findings of fact are primarily contained in this section but appear as well in its conclusions of law.

4

**II.    The Sign Business**

Gao and Li ran L&L Supplies together and operated it as a family business. DX 006 at 5; Tr. 146:14-25 (Li). Gao and Li kept few business records, *see* Tr. 239:4-7 (Li), and did most of their business in cash, *see* Tr. 29:14-16 (Gao); Gao's work was customer-facing: she "[r]eceived phone calls," and "ma[de] layout[s] for the customers," Tr. 51:11-15 (Gao); 148:6-10 (Li: Gao "communicate[d] with the customers."). Gao also had custody of her young grandchildren from 2019 to 2021. Tr. 159:2-160:3, 231:4-232:16 (Li).

Li's work involved taking measurements for the signs. Tr. 148:6-10 (Li). To make measurements for the signs, Li traveled to customer locations and was rarely on the premises of the business. Tr. 154:5-21 (Li). In general, his work took him to Brooklyn, the Bronx, and Queens. Tr. 202:23-25 (Li). L&L Supplies contracted the sign making itself at times to independent contractors identified as "Wu" and "Ye." Tr. 19:1-18 (Gao); Tr. 148:11-21, 151:22-152:2 (Li). Wu and Ye were paid on a job-by-job basis and also worked for other sign companies. Tr. 171:16-172:9. During the COVID-19 pandemic, L&L Supplies was closed for several months. Tr. 75:15-22 (Gao); 214:7-23 (Li).

Gao and Li ran L&L Supplies together until, in or around December 2021 or January 2022, Li injured his back in a fall and could no longer take measurements for the signs as he had done before. Tr. 152:10-154:4, 164:3-21 (Li). The business did not make money while he was injured. Tr. 165:18-20 (Li). L&L Supplies was dissolved in 2022. *See* Tr. 164:12-14, 172:13-16 (Li); Tr. 16:22-23 (Gao).

The Court finds that based on the testimony presented and the Court's credibility determinations, Liang did not have any role in the operation or management of L&L Supplies, nor did she ever work for L&L Supplies. Tr. 267:10-268:17 (Liang).

### III. Prior Proceedings

Li and Gao have a history of litigation between them. Li served Gao with divorce papers at some point between November 2021 and February 2022. Tr. 65:5-17 (Gao); Tr. 291:1-5 (Liang). Gao thereafter filed this action on May 6, 2022. *See* Compl. Gao has also filed other complaints against Li in state court related to a shared property purchased by them during their marriage; these cases were filed in May 2017 and August 2018. *See* DX 005; DX 006.

## DISCUSSION

Plaintiff brings minimum wage and overtime claims under the FLSA and the NYLL, as well as a claim for violations of the WTPA. Defendants contend that judgment should be entered against Plaintiff because (1) she has not proven that either of the Defendants was her employer, (2) she has not proven the amount of her uncompensated work on her minimum-wage and overtime claims, (3) she failed to prove individual or enterprise coverage under the FLSA, (4) her FLSA claims are mostly time-barred, and (5) she lacks standing to recover on her WTPA claims. DCOL ¶¶ 35-36, 45, 51, 60-61, 62. Gao bears the burden of proving her claims and damages by a preponderance of the evidence. *See Chen v. H.B. Rest. Grp., Inc.*, No. 16-cv-02005 (RWL), 2020 WL 115279, at *8 (S.D.N.Y. Jan. 9, 2020) (collecting cases). For the following reasons, the Court agrees with Defendants that Plaintiff has not proven that Defendant was her employer and therefore grants judgment in favor of Defendants on all claims.

### I. Neither Li nor Liang were Gao's Employers

Based on thorough consideration of all the evidence and arguments presented, and for the following reasons, the Court agrees that neither Li nor Liang were Gao's employers within the

meaning of the FLSA or the NYLL.  The Court will first consider the evidence and arguments as to Li and will then consider the evidence and arguments as to Liang.

### A. Legal Standard

"For liability to attach under the FLSA or the NYLL, a defendant must be an 'employer.'"  *Lipstein v. 20X Hosp. LLC*, No. 22-cv-04812 (JLR), 2023 WL 6124048, at *5 (S.D.N.Y. Sept. 19, 2023) (citation omitted).  "The FLSA contains a broad definition for 'employees,' in accordance with the Act's remedial purpose.  It defines 'employee' as 'any individual employed by an employer' and to 'employ' as including 'to suffer or permit to work.'"  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 203(e)(1), (g)).  The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d). "The NYLL uses a nearly identical definition of the term 'employer,' and district courts in this Circuit have interpreted the definition of employer under the NYLL coextensively with the definition used by the FLSA."  *Lipstein*, 2023 WL 6124048, at *5 (internal quotation marks omitted) (quoting *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 258 (S.D.N.Y. 2022)).  "Accordingly, district courts have analyzed whether an individual is an employer using the same analysis under the FLSA and NYLL."  *Id.*

Under the FLSA, to be held liable as an employer, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to plaintiff's employment."  *Ethelberth*, 91 F. Supp. 3d at 352 (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)).  The Supreme Court has counseled that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"  *Barfield v. N.Y.C. Health &*

*Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (first quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); and then quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). As a result, courts in this Circuit use a four-factor test to determine the economic reality of a putative employment relationship, and consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *accord Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 509 (S.D.N.Y. 2013) (same). "No one of the four factors standing alone is dispositive." *Lipstein*, 2023 WL 6124048, at *5 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

      **B.**     **Li Was Not Gao's Employer**

Based on the evidence presented at trial, Li did not have sufficient control over Gao, formally or otherwise, to qualify as her employer under the FLSA. While Gao claimed that Li was the "owner" of L&L Supplies, Tr. 17:3-4 (Gao), the Second Circuit has held that "[e]vidence that an individual is an owner or officer of a company . . . is insufficient to demonstrate 'employer' status," *Irizarry*, 722 F.3d at 109. Therefore, the Court considers the evidence with respect to the aforementioned factors in turn.

First, Gao testified that Li hired her to work at L&L Supplies in 2018. Tr. 17:2-9, 42:8-10 (Gao). The Court does not credit this testimony because Gao had been working with Li at the family sign business for years. Starting at least as early as 2013, Gao and Li operated their family sign business out of a brick-and-mortar store located at 149 East Broadway in Chinatown. Tr. 146:22-147:14, 162:15-21 (Li); *see also* DX 001; DX 007; DX 008. While the name changed over the years, the business remained the same. Tr. 43:21-44:11 (Gao); Tr.

8

146:22-147:14 (Li).  For example, in or around 2013, Gao and Li operated the business under the name "Shun Da Sign Design, Inc."  *See* Tr. 162:11-21 (Li); DX 007.  Several years later, they operated it under the name "Creative Sign Design, Inc."  *See* Tr. 163:7-19 (Li); DX 008.  Gao admitted that she was not formally hired to work at L&L Supplies and did not apply to work there.  Tr. 43:8-16 (Gao).  At most, this is a situation where Gao continued to work with Li at the family business.

There is also no evidence that Li had the power to fire Gao; instead, she worked with him to "run the family sign business" from which the couple received joint income.  DX 006 at 5.  Gao did not testify or otherwise present evidence indicating that Li had the power to fire her, and indeed claims that Liang, not Li, was the one who fired her.  Tr. 24:13-25:9 (Gao).  In contrast, Li affirmatively and credibly testified that he did not fire Gao.  Tr. 171:6-7, 240:16-17 (Li). The Court also concludes that Gao was not fired, and instead that L&L Supplies ceased doing business in early 2022.  *See* Tr. 151:3-5, 171:1-7, 240:16-17, 241:1-6 (Li).  Therefore, this factor weighs against finding that Li was Gao's employer.

Second, in support of the claim that Li supervised and controlled her work schedule or conditions of employment, Gao testified that Li set her hours and told her when she needed to work overtime.  Tr. 25:13-26:5 (Gao).  By contrast, Li testified that Gao controlled her own schedule, decided "who would do what to operate the business," Tr. 153:24-154:1 (Li), and handled all communications with customers herself.  Tr. 152:14-154:4, 158:16-21 (Li).  Li also testified that he did not oversee Gao's interactions with customers.  Tr. 153:4-5, 154:5-21 (Li).  The Court credits Li's testimony instead of Gao's on this point.  That Li did not supervise Gao is supported by statements that L&L Supplies was a joint "family sign business" that Gao "joined [Li] to run," DX 005 at 4; DX 006 at 5, and by the division of labor within the business, in which "[m]ost of [Li's] time . . . was not in the company [store],"

9

but was instead spent outside the business, taking measurements for signs, Tr. 154:5-21 (Li). Gao also independently interacted with the business's accountant, Tr. 157:15-21 (Li), and accessed the company's bank account, Tr. 157:3-14 (Li). The Court finds that Gao ran L&L Supplies along with Li, was not supervised by Li, and managed her own hours, tasks, and work schedule. Taken together, this factor weighs against a finding that Li was the employer of Gao.

Third, the Court concludes that Li did not determine the rate and method of payment for Gao. Again, the only evidence to support this point came from Gao's testimony that Li would pay her $1,000 in cash each month — "never more, never less." Tr. 75:23-76:6 (Gao); *see also* Tr. 18:9-12, 27:18-28:7 (Gao). The Court does not find credible Gao's contention that after almost two decades of working with her husband in the family sign business, she suddenly began receiving a fixed salary in January 2018. *See* Tr. 43:21-44:11, 45:7-25, 46:1-6 (Gao). Li also credibly testified that he did not pay Gao in cash and explained that Gao never received a fixed salary from L&L Supplies. Tr. 155:20-157:13 (Li). Gao collected the money that came into the business, had access to L&L Supplies' bank account to deposit and withdraw money, and did not need to consult with Li "before depositing or withdrawing money from the business bank account." Tr. 156:22-157:14 (Li). Li's testimony, not Gao's, is consistent with Gao's prior statements in verified complaints that the money made by the "family sign business" was "joint income" both before and after she claimed to have started working at L&L Supplies. DX 005 at 4; DX 006 at 5. Because the Court finds that Li did not determine the rate and method of Gao's payment, and the income from the business was treated as joint income, this factor weighs against a finding of formal control by Li.

Finally, the Court concludes that Li did not maintain any employment records pertaining to Gao's employment. Gao testified that Li instructed her to keep a record of her

hours, and that she did so in a small black book that she left behind in L&L Supplies the day she was fired. Tr. 26:14-27:14 (Gao). Li credibly testified that he had no documents reflecting records of when Gao worked at L&L Supplies because Gao arranged her own hours. Tr. 239:4-7 (Li). The Court does not credit Gao's testimony, as the proposition that she recorded her hours on Li's instructions is inconsistent with the nature of the business, in which Gao and Li ran L&L Supplies together as a family business, shared the income from the business as joint income, and generally kept few records, DX 005 at 4; DX 006 at 5; Tr. 239:4-7 (Li). *See Chill v. Calamos Advisors LLC*, 417 F. Supp. 3d 209, 229 (S.D.N.Y. 2019) ("Grounds for finding a witness incredible include, *inter alia*, evasive, inconsistent, contradictory, or implausible testimony."). Furthermore, Gao's claim that Li directed her to record her hours is inconsistent with her assertion that Li paid her $1,000, no matter how many hours she worked, Tr. 28:3-7 (Gao). If Li paid her the same amount every month, regardless of hours, then there would be no need for her to record her hours. The Court concludes that Li did not maintain employment records for Gao. This factor weighs against a finding of an employer-employee relationship between Li and Gao.

Because Gao did not present evidence sufficient to suggest that Li had any formal control over her employment based on the Second Circuit's four-factor test, the Court concludes that Li was not Gao's employer. This is consistent with the decisions of other courts that have concluded that romantic partners who worked in a shared family business did not have an employer-employee relationship under the FLSA. *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007), is instructive. In *Steelman*, the parties were committed romantic partners who "worked side by side in a dog-grooming business" and "supported themselves from the business' proceeds." *Id.* at 125. The court concluded that the plaintiff was not an "employee" for the purposes of the FLSA because she "did not obtain a bargained-for portion of her

11

supposed employer's assets," but instead had "extensive access to company funds"; the parties "shared the risks and rewards of their joint venture in a fashion more characteristic of a partnership than an employer-employee relationship"; and the parties performed the "same duties" at their business. *Id.* at 130. As a result, their business relationship fell "outside the FLSA because it 'differ[ed] substantially from the traditional employment paradigm.'" *Id.* at 131 (quoting *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993)). This is precisely what occurred here. Gao did not obtain a bargained-for salary when she ran the family business with Li. She had free access to the business's bank account and could deposit and withdraw from it at her discretion. Li and Gao shared the "risks and rewards" of their business — and indeed, Gao's prior statements indicate that they used the joint income from the business to purchase an apartment together. DX 005 at 4; DX 006 at 5; *see Wang v. China Wok*, No. 17-cv-00691, 2020 WL 5593235, at *4-5 (N.D. Ohio Sept. 18, 2020) (finding plaintiff was not an employee where she possessed "credit cards in her name paid for with business proceeds" and represented that she had "a financial interest" in the business). While Gao and Li performed different tasks at the business, they split the labor between them "in a fashion more characteristic of a partnership than an employer-employee relationship." *Steelman*, 473 F.3d at 130; *see also Wang*, 2020 WL 5593235, at *4-5 (similar). The Court finds credible Li's testimony that Gao determined her own role in the business, Tr. 153:24-154:1 (Li), Gao managed the business on a day-to-day basis because "most of [the] time [Li] was not in the company," Tr. at 154:7 (Li), as he was measuring signs for customers at Gao's direction, Tr. 148:6-10, 154:8-21 (Li), and Gao managed her own hours, Tr. 161:8-13 (Li). Based on the economic reality of the partnership between Gao and Li, the Court concludes that Gao was not employed by Li.

12

### C. Liang Was Not Gao's Employer

The evidence in this case even more conclusively shows that Liang was not Gao's employer.

First, Liang did not have the power to hire and fire Gao. Gao admitted that she had no interaction with Liang when she was allegedly hired for the business in 2018. Tr. 45:2-9 (Gao). Liang met Li at a friend's birthday party sometime in July 2020 — almost two years after L&L Supplies was formed and well after Gao was allegedly hired to work at L&L Supplies — and Liang and Li thereafter began a personal relationship with each other. Tr. 274:22-275:15 (Liang); *see also* Tr. 168:16-24, 169:12-18 (Li); Tr. 283:13-284:5 (Liang). Li and Liang both credibly testified that Liang did not hire Gao to work at L&L Supplies. Tr. 152:3-5 (Li); Tr. 268:11-12 (Liang). Gao's claim that Liang was Li's business partner — and presumably then had the power to hire and fire her and others — is based on a phone call Gao allegedly made to Li in either 2019 or 2021, in which Li told her that Liang was a "boss." Tr. 21:4-16, 44:12-45:1 (Gao). Gao also testified that she saw a document that showed that Liang owned 51 percent of the business. Tr. 20:2-21:16 (Li). The Court does not find this testimony to be credible given the other evidence presented.

Gao's claim that Li told her that Liang was "also the boss," Tr. 44:18-22, is contradicted by Li's testimony that he never told his wife that Liang was her boss, Tr. 170:8-10 (Li), Liang's credible testimony that she never owned or managed L&L Supplies or had the power to hire employees, Tr. 267:10-268:12 (Liang), and Gao's prior claims that she and her husband ran the business together as a joint family business, DX 005 at 4; DX 006 at 5. The Court also does not credit Gao's testimony that there was a document that showed that Liang owned 51 percent of L&L Supplies. No such document was introduced at trial. Gao admitted that she does not read English, that the document was in English and therefore Gao

13

admittedly could not read it, and that she was not even sure that the letter had anything to do with the sign business. Tr. 20:4-10, 81:5-16 (Gao). Her testimony about the contents of the document was very vague, and the Court was not provided with sufficient information, especially given the other evidence presented at trial, such as Li's and Liang's credible testimony that Liang did not own 51 percent of L&L Supplies, Tr. 169:21-22, 176:15-17 (Li); Tr. 267:14-15 (Liang), to find by a preponderance of the evidence that Liang owned part of L&L Supplies.

Gao claims that Liang had the power to fire employees because Liang fired her from L&L Supplies on February 20, 2022. Tr. 21:17-21, 24:21-25:9, 44:12-22 (Gao). At trial, Gao testified that on February 20, 2022, Liang came to L&L Supplies with police officers and that the officers, through a translator, told her that they wanted her to leave. Tr. 21:16-21, 24:21-25:9 (Gao). Liang denied that this ever happened. Tr. 268:16-23 (Liang). Li likewise denies that Liang fired Gao on February 20, 2022, or at any other time. Tr. 171:1-5 (Li). Having weighed the competing testimony and made credibility determinations, the Court concludes that Liang did not fire Gao from L&L Supplies on February 20, 2022. Given the persuasive testimony about Liang's lack of involvement in L&L Supplies and the history of the family business that was jointly run by Gao and Li, the Court credits Li and Liang's testimony that Liang did not fire Gao.

Gao's final argument in support of the claim that Liang had the power to hire and fire employees is her claim that Liang hired Wu and Ye, the two independent contractors who performed some work for L&L Supplies. Tr. 19:10-11 (Gao). The only evidence offered in support of this claim was Gao's testimony that Liang "hire[d] those individuals." *Id.* When pressed about the basis for this testimony, she stated that in 2019, Wu and Ye told her that Liang hired them. Tr. 40:19-41:3 (Gao). Putting aside the fact that this testimony contains

14

hearsay, the Court does not find Gao's testimony in this regard to be credible. It is implausible that Liang hired Wu and Ye in 2019. As Liang and Li both testified, and Gao did not refute, Liang and Li did not meet until 2020. Tr. 168:16-169:3 (Li); Tr. 274:22-25 (Liang). The Court does not credit the claim, therefore, that Liang hired independent contractors for L&L Supplies a year before she even met Li.

Taken together, the preponderance of the evidence does not support Gao's claim that Liang had the power to hire and fire Gao. The first factor therefore weighs against a finding of an employment relationship between Gao and Liang.

The Court further concludes that Liang did not supervise or control employee work schedules or conditions of employment. Gao admitted that she never even met Ms. Liang before February 20, 2022. Tr. 88:25-89:4, 90:20-22 (Gao); *see also* Tr. at 116:16-18 (Gao: "I don't know her."). She also ultimately conceded that Liang did not set her schedule, claiming that only Li set her schedule. *See* Tr. 47:18-48:4, 116:16-18, 118:7-9 (Gao). Gao testified that Liang supervised Wu and Ye. Tr. 19:12-13 (Gao). When pressed on the basis for this claim, however, Gao explained that she had overheard phone calls on speakerphone in 2019 between Liang and Wu or Ye, in which "[s]he asked them to do this or that." Tr. 41:4-12 (Gao). The Court finds this testimony to be incredible given the unrefuted testimony that Liang only met Li in 2020, and Gao's admission that she did not identify the speaker as Liang at the time, and identified her voice only years later, in 2022, when Liang came to L&L Supplies. Tr. 40:22-42:6 (Gao). Moreover, the Court credits Liang's (and Li's) testimony that Liang was not involved in the business of L&L Supplies. Tr. 267:1-268:17 (Liang); Tr. 169:16-170:4 (Li). The Court therefore finds that Liang did not supervise or control employees of L&L Supplies, including Gao, and thus finds that the second factor weighs against finding an employment relationship between Gao and Liang.

15

As to the third factor, the Court concludes that Liang did not determine the rate and method of payment for Gao or other employees. Gao presented no credible evidence that Liang determined the rate and method of payment for Gao. The only evidence that Gao proffered to support this factor was her testimony that Wu and Ye told her that Liang paid them. Tr. 19:19-20 (Gao). This hearsay testimony was contradicted by Li's and Liang's credible testimony that Liang had no involvement in the operation of L&L Supplies. Tr. 169:16-170:4 (Li); Tr. 267:1-268:17 (Liang). Gao's credibility with regard to this claim is further undermined because the Court does not find that Liang supervised Wu and Ye. Thus, this factor also weighs against a finding of an employee-employer relationship between Liang and Gao.

Finally, as to the fourth factor, Gao presented no evidence that Liang maintained any employee records, either for her or independent contractors Wu and Ye. This factor also weighs against a finding of an employment relationship.

Taking the four factors together, the Court concludes that Liang was not Gao's employer. The conclusion that Liang had no involvement in L&L Supplies is bolstered by Liang's testimony that she had two full-time jobs during the relevant time period. Liang credibly testified that from January 2018 to the present, she worked full-time as a real-estate agent for Guan Realty. Tr. 259:2-11, 260:16-261:12 (Liang). During the pandemic, she also began working as healthcare staff. Tr. 261:2-22 (Liang). Liang's testimony on this matter was consistent throughout, and Gao presented no evidence to contradict it. The Court also found Liang credible based on her demeanor at trial and consistent testimony. *See Weng v. New Shanghai Deluxe Corp.*, No. 19-cv-09596 (ER), 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) (in assessing witness credibility, a court may base their findings of fact on, among other things, the demeanor of the witnesses). The Court finds that this evidence supports the

conclusion that Liang had no involvement with L&L Supplies and no employment relationship with Gao.

## II. Assessment of Plaintiff's Claims

Based on the foregoing, the Court concludes that Gao has failed to prove that either Li or Liang were her employers, a prerequisite for her claims under the FLSA and NYLL. *See Wang v. Leo Chuliya, Ltd.*, No. 20-cv-10395 (JLR), 2024 WL 324789, at *3 (S.D.N.Y. Jan. 29, 2024) ("Only an 'employer' can be liable for violations of the labor rights conferred by the FLSA and the NYLL." (quoting *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022), *aff'd*, No. 22-2917, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (summary order))); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("To be held liable under the FLSA, a person must be an 'employer' . . . ." (quoting 29 U.S.C. § 203(d)).

The Court further finds that Plaintiff did not provide credible testimony as to the amount of her uncompensated work on her minimum-wage and overtime claims, especially given that the Court does not credit Gao's assertion that she never took time off from 2019 to 2021 to care for her three grandchildren, who were all under four years old, placed in her custody by the state, and for whom she received child support payments. Tr. 35:17-24; 49:22-51:10 (Gao); *see also* Tr. 231:6-232:18 (Li) (credibly testifying that the state came two to three times a week to check that Gao, their caregiver, was home and that the other grandmother only took care of the children for "slightly more than ten days"). However, the Court need not determine whether Plaintiff's FLSA and NYLL claims should be dismissed on this basis, because Plaintiff has failed to prove that Defendants were her employers. *See, e.g.*, *Chen v. Hunan Manor Enter., Inc.*, No. 17-cv-00802 (GBD), 2023 WL 5574854, at *9 (S.D.N.Y. Aug. 29, 2023) (when an employee-plaintiff relies on their testimony regarding their recollection alone, "such testimony only establishes a presumption *if the testimony is*

17

*credible*" (emphasis added) (quoting *Romero v. Rung Charoen Sub, Inc.*, No. 19-cv-01239 (VSM), 2017 WL 4480758, at *4 (E.D.N.Y. Sept. 30, 2017))); *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (summary order) (affirming dismissal of employee's FLSA and NYLL claims after bench trial because employee's testimony was "too vague to be credible" even though plaintiff-employee's burden is "minimal" where the employer failed to keep accurate time and pay records). Accordingly, Defendants are entitled to judgment in their favor on Gao's FLSA and NYLL claims.

Finally, Gao cannot prevail on her WTPA claims that she did not receive the requisite wage notices and statements not only because Defendants were not her employer, but also because she does not have standing to bring such claims. When, as here, the plaintiff alleges a statutory violation, "a plaintiff cannot rely on 'technical violations' of the Labor Law [to establish standing] but must allege 'actual injuries suffered as a result of the alleged . . . wage notice and wage statement violations.'" *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (omission in original) (citation omitted); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) (holding that a statutory violation alone does not amount to an injury in fact for purposes of Article III standing). Gao did not set forth anything in her Complaint or proposed findings of fact and conclusions or law — let alone present *any* evidence at trial — that "demonstrated any concrete injury from not having received compliant wage notices and statements." *Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 453 (S.D.N.Y. 2024); PFOF at 3; (stating only that Gao did not receive the wage notice and statements in violation of NYLL § 195(1), (3) & NYLL § 198(1-b)); PCOL ¶¶ 24-25 (same). Gao testified that she knew when she was working that she was underpaid, Tr. 77:10-12 (Gao), but "provided no reason to believe that [she] would have done anything different had [she] known of other misinformation or lack of information associated with wage notices and statements," *Feng*,

18

727 F. Supp. 3d at 453.  As a result, she lacks standing to bring a WTPA claim even if Defendants were her employer and failed to provide the requisite statements and notice.  *See id.* at 453-54 (dismissing WTPA claim after bench trial where plaintiff did not establish standing); *Hunan Manor*, 2023 WL 5574854, at *13 (same).

Given the foregoing, the Court need not reach the alternative arguments raised by Defendants.

## CONCLUSION

For all of these reasons, the Court finds in favor of Li and Liang as to all of Gao's claims.  Li's motion for judgment under Rule 52(c) is DENIED as moot.  The Court directs the Clerk of Court to enter final judgment in favor of Li, Liang, and L&L Supplies, and close the case.

Dated: December 12, 2024
      New York, New York

                              SO ORDERED.

                              *Jennifer Rochon*
                              _____
                              JENNIFER L. ROCHON
                              United States District Judge